IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD BENGE, MICHAEL HUTTON,
FRANK JAMES, WILLIAM QUILTY and
LARRY TRIPP,

        *Plaintiff*,

vs.

        Case No. 2:22-cv-002231-EFM

UNITED PARCEL SERVICE, INC.,

        *Defendant.*

**MEMORANDUM AND ORDER**

Before the Court is Defendant United Parcel Service, Inc. ("UPS")'s Motion to Dismiss Plaintiffs Richard Benge, Michael Hutton, Frank James, William Quilty, and Larry Tripp (collectively "Plaintiffs")'s claims for negligent misrepresentation, fraud through silence, fraud, and promissory estoppel. This is not the first time the District of Kansas has entertained one of UPS's motions to dismiss its employees' claims for negligent misrepresentation, fraud through silence, and fraud. Just last year in *Ballou v. United Parcel Serv., Inc.*,[1] the court denied UPS's motion on facts practically identical to those before this Court. In the present case, UPS claims

---

[1] 2021 WL 1056430 (D. Kan. 2021).

that the Court should grant its Motion because "UPS presents different and more comprehensive arguments" than it did in *Ballou*. While UPS's arguments may have changed, the law has not. Therefore, the Court denies UPS's Motion to Dismiss.

## I.     Factual and Procedural Background[2]

Plaintiffs are all UPS employees recruited by UPS in 2020. At that time, Plaintiffs were not members of any union nor subject to any collective bargaining agreement ("CBA"). UPS, however, had a CBA with its drivers' union which was available for viewing on the International Brotherhood of Teamsters website.

UPS offered Plaintiffs full time employment as "Sleeper" drivers, guaranteeing them a minimum of $30 an hour. UPS never informed Plaintiffs of the Brotherhood of Teamsters website, the terms of the CBA, or gave any indication that the particulars of Plaintiffs' employment depended on anything other than the offer made by UPS to Plaintiffs. In reliance on UPS's offer, the Plaintiffs left their present jobs to accept UPS's employment. However, UPS soon reneged on its promises, failing to make Plaintiffs "Sleeper" drivers, paying only $21 an hour, and employing them for less than a full 40-hour workweek.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible

---

[2] The facts are taken from Plaintiffs' Complaint and are considered true for the purpose of this motion.
[3] Fed. R. Civ. P. 12(b)(6).

on its face.' "[4]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " [9]

### III.    Analysis

**A.    *Garmon* does not preempt Plaintiffs' claims in this case.**

The Supreme Court in *San Diego Building Trades Council v. Garmon*[10] determined that "activities that are arguably protected or prohibited by the NLRA [National Labor Relations Act]" fall within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").[11]  Therefore, both state and federal courts cannot hear such claims.[12]  Showing that a claim is

---

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[10] 359 U.S. 236 (1959).

[11] *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1165 (10th Cir. 2004) (citing *Garmon*, 359 U.S. at 244).

[12] *Id.*

"arguably" covered by the NLRA requires the party arguing preemption "to demonstrate that his case is one that the [NLRB] could legally decide in [the suing employee's] favor."[13] This essentially requires the party asserting preemption to pass a two part test.[14] To begin, the party "must advance an interpretation of the Act that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the Board."[15] "The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation."[16]

Therefore, preemption under *Garmon* only applies "when the controversy presented to the [] court is identical to that which could have been, but was not, presented to the Labor Board."[17] Whether *Garmon* preemption is phrased as a jurisdictional prerequisite or addressed under a Rule 12(b)(6) motion, the party alleging preemption bears the burden of showing it applies.[18]

The District of Kansas recently addressed facts practically identical to the present case where UPS employees brought claims for negligent misrepresentation and fraud against UPS.[19] There, the plaintiffs had alleged that UPS offered them full time positions at $30 an hour to be "Feeder" drivers, as well as $25 an hour for other driving within the local area.[20] The plaintiffs accepted their positions with UPS based on these representations.[21] It took only a few months for

---

[13] *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395 (1986).

[14] *See id.*

[15] *Id.* (quotations omitted).

[16] *Id.*

[17] *Felix*, 387 F.3d at 1166 (quotations and citations omitted).

[18] *See Butcher v. Teamsters Local 955*, 2018 WL 6200027, at *2–3 (D. Kan. 2018).

[19] *Ballou*, 2021 WL 1056430, at *1.

[20] *Id.*

[21] *Id.*

UPS to renege on its promises, lowering the plaintiffs pay to $15 an hour for local driving and $23 an hour for Feeder driving, while having each of them work as little as one day a week instead of the promised full-time employment.[22] The court found that *Garmon* did not apply because the plaintiffs only "claim[ed] Defendant fraudulently mispresented pay and working conditions for the purpose of inducing them to accept employment."[23] They did not claim Defendant had made a side-deal with them or had breached the terms of the CBA.[24] Furthermore, UPS made no showing that the case was one the NLRB could have decided in the plaintiffs' favor.[25]

Here, UPS asserts that the *Garmon* preemption "arguably" applies because Plaintiffs' claims are essentially ones that fall under the NLRA. 29 U.S.C. § 158(d) of the NLRA requires employers to bargain in good faith exclusively with the union when negotiating a CBA. Under this provision, UPS argues Plaintiffs' really are asserting two possible claims under the NLRA; (1) direct dealing with employees instead of their union representative and (2) failure to negotiate in good faith. However, UPS does not attempt to put forth evidence which would enable this court to find that the Board could reasonably uphold a claim based on its interpretation of the NLRA, as required to show Plaintiffs' claims arguably fall under the NLRA. Instead, UPS relies on a state court case in Connecticut[26] to argue public policy concerns while largely ignoring this District's very recent decision in *Ballou* involving UPS and practically identical claims.

---

[22] *Id.*

[23] *Id.* at *5.

[24] *Id.*

[25] *Id.*

[26] *Barbieri v. United Techs. Corp.*, 771 A.2d 915 (Conn. 2001).

First, Plaintiffs were not members of a union at the time UPS made the false representations. Therefore, any argument that Plaintiffs' claims really relate to UPS's failure to bargain with their union representatives is without merit. Second, the very language UPS relies upon to show that Plaintiffs' claims really are those for a failure to bargain in good faith only apply to an employers' negotiations with the appointed union representative.[27] 29 U.S.C. § 158(d) cannot be read to indicate that employers have a good faith duty to negotiate with employees outside of the union because that would facially create an insurmountable conflict within the statute itself. Third, even if either of UPS's interpretations were not clearly contrary to the plain language of the NLRA, UPS has advanced no evidence demonstrating that the NLRB could reasonably uphold Plaintiffs' claims based on those interpretations. Therefore, *Garmon* preemption does not apply in this case.

**B. The Labor Management Relations Act ("LMRA") does not preempt Plaintiffs' claims.**

Under Section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties."[28] The Supreme Court has interpreted this provision to mean that "[a] state rule that purports to define the meaning or scope of a term in a contract suit . . . is pre-empted by federal labor law."[29] The question in determining whether a labor dispute is preempted by the LMRA is

---

[27] *See, e.g.*, *Ackers v. Celestica Corp.*, 2007 WL 894470, at *2–6 (S.D. Ohio 2007), *aff'd*, 274 F. App'x 450 (6th Cir. 2008) (holding that plaintiffs' fraud claims were arguably failure to negotiate in good faith when plaintiffs' were already members of a union when negotiations occurred and all negotiations were between the employer and the union representative).

[28] 29 U.S.C. § 185(a).

[29] *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).

whether the claim is "inextricably intertwined with consideration of the term of the labor contract."[30]

For example, in *Lingle v. Norge Division of Magic Chef, Inc.*,[31] the Supreme Court held that a state law claim was not preempted because "the 'purely factual questions' necessary to prove the elements of this claim could be determined without interpreting any term of a CBA."[32] "In other words, even if dispute resolution pursuant to a CBA, on the one hand, and state law, on the other, would require addressing 'precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes.' "[33] As properly stated in *Ballou*, "[s]ection 301 preemption merely ensures that federal law will be the basis for interpreting CBAs; it says nothing about the rights a state may provide workers when adjudication of those rights does not depend on interpretation of a CBA."[34]

In *Ballou*, UPS unsuccessfully argued "that because the CBA addressed the compensation, hours, and lay-off rules to which Plaintiffs were contractually entitled, the resolution of Plaintiffs' [fraudulent inducement and misrepresentation] claims necessarily requires interpretation of the CBA or is substantially dependent on analysis of the CBA."[35] UPS makes the exact same failing argument here.

---

[30] *Id.* at 213.

[31] 486 U.S. 399 (1988).

[32] *Rael v. Smith's Food & Drug Centers, Inc.*, 712 F. App'x 802, 804 (10th Cir. 2017) (quoting *Lingle*, 486 U.S. at 407).

[33] *Ballou*, 2021 WL 1056430, at *3 (quoting *Lingle*, 486 U.S. at 410).

[34] *Id.*

[35] *Id.*

The element of fraudulent inducement under Kansas law are: "(1) [t]he defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations; (5) the other party sustained damages by relying upon the representations."[36]  The elements for negligent misrepresentation are: "(1) [t]he person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating it; (2) the party receiving the false information reasonably relied on it; and (3) the person relying on the false information is a person or one of a group of persons for whose benefit and guidance the information is supplied or a person or one of a group of persons to whom the person supplying the information knew the information would be communicated by another; and (4) the party receiving the information suffered damages."[37]  Finally, the elements of promissory estoppel are: "(1) [t]he promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice."[38]

None of the elements for any of Plaintiffs' claims require examining the terms of the parties' CBA. As the court found in *Ballou*, UPS could have fully complied with each of the CBA's provisions without affecting Plaintiffs' ability to prevail on their claims here. After all, what matters is not the contents of the CBA, but rather "the employer's behavior, motivation, and

---

[36] *Stechschulte v. Jennings*, 297 Kan. 2, 19, 298 P.3d 1083, 1096 (2013).

[37] *Rinehart v. Morton Bldgs., Inc.*, 297 Kan. 926, 305 P.3d 622, 630 (2013).

[38] *Templeton v. Kan. Parole Bd.*, 27 Kan. App. 2d 471, 6 P.3d 910, 913 (2000).

statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to them, and their reliance on it."[39]  Here, "[s]tate law—not the CBA—is the source of the rights asserted by plaintiffs: the right to be free of economic harm caused by misrepresentation."[40]  Plaintiffs "do not assert any violation of contractual rights under any labor agreement, but rather sue to vindicate their right not be defrauded.  They are thus asserting rights independent of the contract and are not preempted by § 301."[41]  Accordingly, UPS's Motion to Dismiss fails on this ground.

**C.     Plaintiffs sufficiently allege that they reasonably and justifiably relied upon UPS's misrepresentations in their Complaint.**

In its original Memorandum, UPS makes the groundless argument that Plaintiffs failed to state a claim because "Plaintiffs cannot show their reliance on any such alleged misrepresentations were [sic] justifiable or reasonable."  It is unclear what legal basis UPS relies on to make this argument.  Undoubtedly, justifiable reliance is a requisite element of Plaintiffs' fraud claims whereas reasonable reliance is necessary for Plaintiffs' negligent misrepresentation claim.[42]  However, UPS cites the wrong standard that Plaintiffs must meet at this stage in the case.

All that Plaintiffs must do to survive a motion to dismiss under Rule 12(b)(6) is plead a claim that is facially plausible.  UPS's assertion that Plaintiff must "show" its reliance was reasonable or justifiable is off point.  In fact, UPS cites no caselaw in support of its argument that Plaintiffs must "show" reasonable or justifiable reliance except: (1) a district court order disposing

---

[39] *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 235 (2d Cir. 1997) (holding that misrepresentation claims were not preempted by § 301) (quoted by *Felix*, 387 F.3d at 1164).

[40] *Id.*

[41] *Felix*, 387 F.3d at 1164.

[42] *See Heuertz v. Caregivers Home Health LLC*, 2022 WL 621370, at *10 (D. Kan. 2022).

of a motion for summary judgment;[43] (2) a bankruptcy order that does not discuss reliance at all;[44] and (3) a Kansas state court case merely laying out the elements for promissory estoppel.[45] None of these cases support UPS's position.

Reviewing Plaintiffs' Complaint reveals they have adequately pled justifiable and reasonable reliance on UPS's fraudulent statements. UPS assured Plaintiffs that they would be paid $30 an hour and that they would be full-time "Sleeper" drivers. UPS never gave any indication to Plaintiffs that there was a CBA to which they would then become parties, nor did it inform Plaintiffs of the International Brotherhood of Teamster's website. Drawing all inferences in favor of Plaintiffs, it is both reasonable and justifiable that an employee would believe the employer's representations regarding pay, hours, and the type of work. Therefore, Plaintiffs have sufficiently stated each of their claims.

In its Reply, UPS argues that Plaintiffs have conceded that they failed to state a claim by not responding to UPS's argument regarding reliance in their Response. UPS's citation to *Tronsgard v. FBL Fin. Grp., Inc.*,[46] to support this position is misguided. There, the defendants in their motion to dismiss substantively argued that recission of a contract was unavailable under Kansas law.[47] The plaintiffs failed to respond to this argument in their response.[48] Furthermore, their complaint only once mentioned recission in a heading.[49] Therefore, the court found that the

---

[43] *Id.*

[44] *In re Emporia Property Grp., LLC*, 2022 WL 567727, *3 (Bankr. D. Kan. 2022).

[45] *Templeton*, 6 P.3d at 913.

[46] 312 F. Supp. 3d 982 (D. Kan. 2018).

[47] *Id.* at 1009.

[48] *Id.*

[49] *Id.*

plaintiffs had abandoned their recission claim.[50]  Similarly, in *Hinsdale v. City of Liberal*,[51] the Tenth Circuit affirmed the district court's dismissal of a plaintiff's equal protection claim.[52]  The plaintiff had failed to respond in any manner to the defendants' motion for summary judgment on that claim, demonstrating complete abandonment.[53]

As evident from above, UPS's cited cases are inapposite to the present situation.  Unlike *Tronsgard*, Plaintiffs consistently allege that their reliance was justifiable and reasonable throughout their Complaint.  Furthermore, this is not some throwaway issue barely alleged in the Complaint.  Were Plaintiffs to agree that their reliance was not justified or reasonable, their claims would each fail.  It appears unlikely that by advocating against UPS's motion to dismiss, Plaintiffs have shown an intent to abandon their claims.  Regardless, the Court finds that UPS's argument on this point was groundless and without merit.  Even if Plaintiffs had conceded to UPS's loose interpretation of the Rule 12(b)(6) standard, that would not make it right.  Therefore, the Court has no hesitation in denying UPS's Motion on this basis.

**IT IS THEREFORE ORDERED** that Defendants Motion to Dismiss (Doc. 10) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 13th day of October, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[50] *Id.*

[51] 19 F. App'x 749 (10th Cir. 2001).

[52] *Id.* at 769.

[53] *Id.*